# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD FRANZEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 0641 |
| v. ) | |
| ) | Judge John W. Darrah |
| ELLIS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Franzen, filed suit against Defendant, Ellis Corporation, alleging violations of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and state law claims for breach of contract and wrongful discharge. Presently pending before the Court is Defendant's Motion for Summary Judgment.

## BACKGROUND

Franzen began working at Ellis as a Mechanical Engineer in October 1999. (Def.'s 56.1(a)(3) Statement ¶ 7). When he was hired, he received a copy of Ellis's Employee Handbook. (Id., ¶ 8). Franzen acknowledged receiving the Employee Handbook by signing an acknowledgment form, which provided the following:

> Your signature below acknowledges your receipt of a copy of this Handbook and that:
>
> 1. You understand that employment with the Company is at-will.
> 2. You have read and understand the Company personnel policies.
> 3. You understand that provisions of this Handbook are guidelines, statements of policy and procedure. It is not intended to be a contract or an offer of a contract. The policies discussed in this Handbook are not guaranteed and

may be changed by the Company without your consent or prior knowledge; however, you will be notified of such changes.

(Id., ¶ 9). Ellis's Employment-At-Will section of the Employee Handbook provides, in relevant part:

It is the policy of the company that all employees who do not have a written employment contract with the company for a specific, fixed term of employment are employed at the will of the company for an indefinite period and are subject to termination at any time, for any reason, with or without cause or notice. Likewise, such employees may terminate their employment at any time and for any reason.

\* \* \*

This policy may not be modified by any statements contained in this Handbook or other employee handbooks, employment applications, company recruiting materials, company memoranda, or other materials provided to applicants and employees in connection with their employment. None of these documents, whether singly or combined, are to create an express or implied contract concerning employment for a definite period, nor an express or implied contract concerning any terms or conditions of employment. Similarly, company policies and practices with respect to any matter are not to be considered as creating any contractual obligation on the company's part or as stating in any way that termination will occur only for "just cause." Statements of specific grounds for termination set forth in this handbook or in any other company documents are examples only, not all-inclusive lists, and are not intended to restrict the company's right to terminate-at-will.

(Id., ¶ 10). The Employee Handbook also provides, in pertinent part:

If you are absent for three consecutive days without notifying the company, it will be considered a voluntary resignation. Employees absent because of illness for three or more days must have a doctor's note before returning to the job.

\* \* \*

We will track occurrences per employee. Anything other than vacation, holiday, bereavement, approved leave of absence, illness or medical appointment with a doctor's note, jury or military duty will be considered unexcused.

(Id., ¶ 11).

The Employee Handbook also describes Ellis's FMLA policy, which provides, to eligible employees, unpaid leave for serious health conditions of those employees, provided the employees "provide the company with a Health Care Certification which is completed by the treating health care provider." (Def.'s 56.1(a)(3) Statement ¶ 12). The Employee Handbook provides: "If [the employee] fail[s] to meet the requirements of this guideline for family or medical leave, [the employee's] request for leave may be denied or delayed until the requirements are met." (Id., ¶ 13).

Ellis's short term disability ("STD") policy requires that an employee be "under the ongoing care of a physician during the Benefit Waiting Period" and further provides, "No STD Benefits will be paid for any period of Disability when you are not under the ongoing care of a physician." (Def.'s 56.1(a)(3) Statement ¶ 14). Ellis has full and exclusive authority to determine the sufficiency and the amount of information Ellis may reasonably require to determine eligibility for insurance, entitlement to benefits, or the amount of benefits payable. (Id., ¶ 15). To qualify to receive STD benefits, Ellis requires that an employee submit doctor's documentation that the employee has an injury or illness that prohibits the employee from being able to work. (Id., ¶ 16).

Jennifer Ruffolo is the Human Resources Manager at Ellis. (Def.'s 56.1(a)(3) Statement ¶ 17). Ruffolo's duties include administering benefits, 401k, payroll, hiring, firing, and employee counseling. (Id., ¶ 18).

Starting April 23, 2002, Plaintiff was absent from work (Def.'s 56.1(a)(3) Statement ¶ 53). On or about May 2, 2002, Franzen telephoned Ruffolo to inform her that he had been in an automobile accident and was unsure about when he would be able to return to work. (Id., ¶ 19).

During this conversation, Ruffolo told Franzen to "provide [her] with a note stating that he was under a doctor's care." (Id., ¶ 20). The doctor's note was needed so Franzen could establish that he was eligible to receive STD benefits. (Id., ¶ 21).

Ruffolo spoke with Franzen again on May 6, 2002. At this time, Franzen told Ruffolo that he had a doctor's appointment scheduled for May 16, 2002, and that he was unsure about when he would be able to come back to work due to injuries from the automobile accident. (Def.'s 56.1(a)(3) Statement ¶ 22). Ruffolo again asked Franzen to provide her with a doctor's note. (Id., ¶ 23). She also explained to Franzen that she would be sending him FMLA paperwork. (Id., ¶ 24).

On May 10, 2002, Ruffolo sent STD/FMLA paperwork to Franzen by certified mail. The paperwork was delivered and signed for on May 11, 2002. (Def.'s 56.1(a)(3) Statement ¶ 25). The STD/FMLA paperwork provided that Franzen's unpaid FMLA benefit period was from May 6, 2002 through July 26, 2002. (Id., ¶ 26). The paperwork specifically provided Franzen with fifteen days to return the paperwork and notified him of the consequence of failing to return the paperwork within the fifteen days:

> A thirty (30) day advance notice is required when the leave is foreseeable, and you must furnish a physician's medical certification of a serious health condition within fifteen (15) days after commencement of leave. If you fail to return the required medical certification in a timely manner, your leave may be delayed or ineligible under the FMLA.

(Id., ¶ 27). The paperwork stated that Franzen was eligible for STD benefits, which are paid as follows: "In compliance with Ellis' policy, the STD Plan's *bi-weekly payments will begin on the eighth day for illness and the first day for injury.*" (Emphasis in original). (Id., ¶ 28). The paperwork also provided:

4

> If you become eligible for STD benefits based on your medical
> condition and the physician's medical certification, you will receive
> the STD benefit of 50% of your salary for a period not to exceed 6
> months. You must be under the regular care and personal attendance
> of a physician for treatment in connection with your total disability.

(Id., ¶ 29). Ellis began paying Franzen STD benefits, effective on or about April 30, 2002, because he had represented that he was going to submit a doctor's note. Ellis had never before had a problem with an employee's failing to submit requisite and timely documentation to establish eligibility to receive STD benefits. (Id., ¶¶ 30-31).

Ruffolo next spoke with Franzen on May 20, 2002, when she called him because she had not heard from Franzen since May 6, 2002. (Def.'s 56.1(a)(3) Statement ¶ 32). During the May 20 conversation, Ruffolo asked Franzen about his status. (Id., ¶ 33). Franzen responded that he was still unable to come to work. (Id., ¶ 34). Ruffolo told Franzen that she had still not received a doctor's note. (Id., ¶ 35). Franzen told Ruffolo that he would ask his doctor to fax the paperwork to her. (Id., ¶ 36).

Ruffolo next spoke to Franzen on May 23, 2002, when Franzen called to ask her if she had received medical documentation and to inform her that he was unable to go and pick up the FMLA paperwork. (Def.'s 56.1(a)(3) Statement ¶ 37). Ruffolo told him that she had not received any medical documentation. (Id., ¶ 38). Ruffolo further told him that all she needed was "something saying he was unable to work and he was under a doctor's care." (Id., ¶ 39). Ruffolo explained to Franzen that she needed some type of doctor's note and that it could be faxed to her. Franzen did not have to personally pick up the documentation and bring it to her. Ruffolo gave Franzen her direct fax number, which is confidential and comes right into her office. (Id., ¶ 40). In the same conversation, Ruffolo told Franzen that "since we had not received anything thus far, that if he did

not provide something to us, that it could be grounds for termination." (Id., ¶ 41). Later that same day, Ruffolo called Franzen because she was leaving for vacation and wanted to make sure that if he was going to fax the paperwork to a fax number other than her private fax number, he send the fax to the attention of Brian Johnson so that the paperwork would not be sitting in Ruffolo's box until she returned from vacation. Ruffolo left a message with this information on Franzen's phone. She also informed Brian Johnson that there would be a fax coming in and asked Johnson to hold the fax for her until she returned from vacation. (Id., ¶¶ 42-43).

Ruffolo was on vacation from the afternoon of May 23, 2002 through May 28, 2002. (Def.'s 56.1(a)(3) Statement ¶ 44). When she returned to work, she had not received any medical documentation from Franzen. (Id., ¶ 45). As of May 28, 2002, Ruffolo had not received Franzen's FMLA paperwork or a doctor's note indicating that he was under a doctor's care and unable to work. (Id., ¶50). Ruffolo recommended to Robert Fesmire, Sr., Ellis's President, whom she had been keeping updated as to Franzen's absence from work, that Ellis terminate Franzen because he had not provided a doctor's note and because the company had already paid him STD; Fesmire approved her recommendation. (Id., ¶¶46-48, 51).

On May 28, 2002, Ellis denied Franzen's request for FMLA leave because Ellis had not received the requisite medical documentation within the fifteen-day time period. (Def.'s 56.1(a)(3) Statement ¶ 52). Ellis also terminated Franzen's employment on May 28, 2002, pursuant to its attendance and punctuality policy and the lack of medical documentation to justify Franzen's absences from work since April 23, 2002. Franzen also failed to call in to Ellis from May 6, 2002 through May 20, 2002. (Id., ¶ 53). That same day, Ruffolo sent Franzen, by certified mail, a letter informing him that his FMLA was denied because he failed to provide medical documentation

within the fifteen-day period and that his employment was terminated pursuant to the company's excessive absenteeism policy based on his unexcused absences. (Id., 54). Ellis also terminated Franzen's STD benefits as of May 28, 2002, because it had not received the requisite medical documentation necessary to ultimately approve Franzen for STD benefits. (Id., ¶ 55). On May 30, 2002, Ruffolo received a doctor's note from Franzen indicating that he was under a doctor's care and was unable to work. (Id., ¶ 56).

Tamara Herman, an employee of one of Franzen's physicians, testified at her deposition that she faxed a work status report to Ellis on May 16 or 17, 2002, on May 20 or 21, 2002, on May 22, 2002, and on May 30, 2002. Herman does not recall any errors indicating that the faxes were not properly sent or received. (Herman Dep.) The work status report indicated that Franzen "should be off work 14 days. May 6 - May 30th." The only confirmation sheet Herman retained from the faxes was for May 30, 2002. (Exh. 1, Herman Dep.).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

Count I of Franzen's Complaint alleges that Ellis's actions constituted a violation of 29 U.S.C. § 2615(a)(1) because its actions interfered with his rights under the FMLA.

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any substantive rights provided by the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA entitles an eligible employee to up to twelve weeks of leave during any twelve-month period because of "a serious health condition." 29 U.S.C. § 2612(a)(1)(d). An employer may require certification from the employee's physician that the employee has such a medical condition. 29 U.S.C. § 2613(a). However, if such certification is required, the employer must give the employee at least fifteen calendar days in which to submit the documentation. 29 C.F.R. § 825.305. If an employee fails to submit the requisite proper documentation to his employer, the employee is not entitled to leave under the FMLA. *See Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000).

Ellis argues that Count I fails because Franzen failed to provide the required medical documentation; therefore, Ellis was within its rights to deny Franzen coverage and terminate his employment for excessive unexcused absences. However, a genuine issue of material fact exists as to whether Ellis received Franzen's medical documentation based on Herman's testimony and related exhibits. While Ruffolo testified that the documentation was never received, Herman testified that the documentation was faxed to Ellis on multiple occasions prior to May 28, 2002, and that she did

not recall any errors indicating that the fax was not properly sent or received.

Count II of Franzen's Complaint alleges that Ellis retaliated against him for exercising his rights under the FMLA.

The FMLA also prohibits discrimination against an individual for instituting or participating in FMLA proceedings or inquiries. 29 U.S.C. § 2615; *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004 (*Buie*). A claim of FMLA retaliation is evaluated the same way that a claim of retaliation under other employment statutes, such as Title VII, are evaluated. Therefore, a plaintiff can establish a claim of retaliation either through the direct or indirect methods of proof. *See Buie*, 366 F.3d at 503.

Under the direct method of proof there are two types of evidence: direct evidence and circumstantial evidence. Direct evidence essentially requires an admission by the employer that its actions were based upon a discriminatory animus. Circumstantial evidence is evidence that allows a jury to infer intentional discrimination by the employer. *Buie*, 366 F.3d at 503.

Circumstantial evidence under the direct method of proof can include suspicious timing. *Buie*, 366 F.3d at 506; *King v. Preferred Technical Group.*, 259 F.3d 887, 893 (7th Cir. 1999) (*King*). While suspicious timing, in and of itself, is not generally sufficient to find a finding of a discriminatory cause, it can suffice where the adverse action followed on the heels of the employer's discovery of protected conduct. *See King*, 166 F.3d at 893 (temporal proximity created an issue of fact where employee's termination occurred one day after she finished her FMLA leave).

Here, Franzen's employment was terminated *the same day* that his FMLA leave was denied and his STD benefits were withdrawn because he allegedly had not provided the proper medical documentation. However, as stated above, a genuine issue of material fact exists as to whether Ellis

had received the documentation. The timing of events and the dispute over whether the documentation had been received by Ellis also calls into question whether Franzen's absences should have been considered excused. Therefore, summary judgment at this stage is not appropriate. *See King*, 166 F.3d at 893.

Count III of Franzen's Complaint alleges that Ellis breached its employment contract with Franzen by failing to perform under its short-term disability policy.

Whether an employee personnel handbook amounts to a contract of employment is determined according to the traditional requirements for contract formation, namely: (1) whether the language in the handbook contains a clear enough promise that an employee would reasonably believe that an offer has been made; (2) whether the handbook was disseminated to the employee in a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) whether the employee has accepted the offer by continuing or commencing to work for the employer after learning of the handbook. *See Semerau v. Village of Schiller Park*, 210 Ill. App. 3d 493, 496 (1991) (*Semerau*). As to the first factor, a personnel handbook is not reasonably interpreted as an offer when the handbook contains language that disclaims the creation of contract with the employee. *See Semerau*, 210 Ill. App. 3d at 496; *Workman v. United Parcel Serv.*, 234 F.3d 998, 1000 (7th Cir. 2000) (*Workman*).

In the instant case, Ellis's employee handbook specifically stated that the provisions in the handbook were "not intended to be a contract or an offer of a contract" and that none of the documents created "an express or implied contract concerning employment for a definite period, nor an express or implied contract concerning any terms or conditions of employment." There is no dispute of material fact in this regard. Accordingly, Franzen's breach of contract claim fails; and

summary judgment in favor of Defendant is granted on this count. *See Semerau*, 210 Ill. App. 3d at 496; *Workman*, 234 F.3d at 1000.

Count IV of Franzen's Complaint alleges a state law claim of wrongful termination based on Franzen's termination after exercising his rights under the short-term disability policy.

An employee at will may be terminated with or without cause and for good reason, bad reason, or no reason at all. *See Shearson Lehman Brothers, Inc. v. Hedrich*, 266 Ill. App. 3d 24, 30 (1994) (*Shearson*). An employee at will has a claim for wrongful discharge only if the reason for the discharge violates "clearly mandated public policy." *Shearson*, 266 Ill. App. 3d at 30. In order to be a subject of public policy as opposed to a personal matter, the "matter must strike at the heart of the citizen's social rights, duties and responsibilities." *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128-29 (1981) (*Palmateer*). Such matters of public policy justifying a wrongful discharge include terminating an employee for filing a worker's compensation claim, *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181 (1978), for exercising the civic right and duty of serving on a jury, for attending court when subpoenaed, for refusing to commit perjury, or for refusing to violate a statute or law, *Palmateer*, 85 Ill. 2d at 128-31 (and cases therein). Purely private matters which do not justify a wrongful termination claim include terminating an employee for submitting an insurance claim under the health insurance plan provided by the employer, *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1981) (*Price*), or attempting to examine the company's books in the employee's capacity as a shareholder, *Palmateer*, 85 Ill. 2d at 131.

Here, Franzen alleges that he was terminated for exercising his rights under Ellis's short-term disability policy.[1] Even if he was terminated for this reason, his claim fails because the matter is purely private. *See Price*, 109 Ill. 2d at 67. Summary Judgment is therefore granted to Defendant on this count.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted in part and denied in part. The Motion for Summary Judgment is granted as to Counts III and IV and denied as to Counts I and II.

Dated: March 24, 2005

JOHN W. DARRAH
United States District Judge

---

[1] In his response brief, Franzen argues that he was wrongfully discharged for exercising his rights under the FMLA; however, in his Complaint, he only alleges he was wrongfully discharged for exercising his rights under the short-term disability policy. Furthermore, a claim of wrongful discharge for exercising his rights under the FMLA would be preempted by the FMLA. *See Alvarez v. Hi-Temp Inc.*, 2004 WL 603489 (N.D. Ill. March 24, 2004).

12